PRIOR AND Another *v.* QUACKENBUSH.

DEED—CONSTRUCTION OF.—At the conclusion of a deed which would otherwise have passed a fee simple to the grantee, this clause was inserted: "N. B. Now the foregoing deed of conveyance is and forever shall be with this express condition, that the foregoing described parcel of land shall, at the death of said A, (the grantee), be forever thereafter in B and C, and they, the said B and C, are the only heirs contemplated or included in the foregoing deed of conveyance."

*Held*, that the deed gave only a life estate to A, with the remainder in fee to B and C.

*Held*, also, that the rule in *Shelley's* case did not apply.

APPEAL from the *Greene* Circuit Court.

ELLIOTT, J.—Suit by the appellants, *James Prior* and *Louisa Prior*, his wife, against *Quackenbush*, for the partition of ten acres of land, and to recover the possession of a moiety thereof. Answer, the general denial. Trial by the court, resulting in a finding for the defendant. A motion for a new trial was overruled, and judgment for the defendant. The only cause stated for a new trial is that the finding of the court is contrary to the evidence. The error assigned is that the court erred in overruling the motion for a new trial.

The facts are these: The appellants, in right of said *Louisa*, the wife, base their right to recover on the following deed of conveyance from *Andrew Stewart* and wife to *Catharine Roe*, viz:

"This indenture, made this 5th day of *September*, 1837, between *Andrew Stewart*, and *Hannah*, his wife, of the county of *Greene* and State of *Indiana*, of the one part, and *Catharine Roe* and her heirs, of the county and state aforesaid, of the other part, witnesseth: that the said *Andrew Stewart*, and *Hannah*, his wife, as well for and in consideration of the natural love and affection which they, the said *Andrew* and *Hannah*, bear to the said *Catharine Roe* and her heirs, as for the better maintenance and support of the said *Catharine* and her heirs, have given, granted, conveyed

and confirmed, and by these presents doth give, grant, convey and confirm to the said *Catharine* and her heirs forever, all that tract or parcel of land lying and being situate in the county and state aforesaid," (then follows a description of the land conveyed by metes and bounds,) "containing ten acres, be the same more or less, together with all the rights, privileges and appurtenances thereunto belonging, or in any wise appertaining, and the reversions, remainders and profits thereof, and all the estate, right, title, interest and claim of them the said *Andrew Stewart*, and *Hannah*, his wife, in and to the same. To have and to hold the premises aforesaid, with all their appurtenances, to the sole and only proper use, benefit and behoof of her, the said *Catharine Roe*, and to her heirs and assigns forever, free from any claim of them the said *Andrew Stewart*, and *Hannah*, his wife, or their heirs, or of any other person whatever, claiming from or under them or any of them.

"In witness, the said *Andrew Stewart* and *Hannah Stewart* have hereunto set their hands and seals, the day and year first above written.

"N. B. Now, the foregoing deed of conveyance is, and forever shall be, with this express condition, that the foregoing described piece or parcel of land shall, at the death of said *Catharine Roe*, be forever thereafter in *Elizabeth Stewart* and *Louisa Stewart*, and that they, the said *Elizabeth* and *Louisa*, are the only heirs contemplated in the foregoing deed of conveyance. Signed and sealed the day and year first above written.

"Witness, *Amos Owen.*

[Sig'd]    . "Andrew ⋈ Stewart. [Seal.]
his / mark.

"Hannah ⋈ Stewart. [Seal.]"
her / mark.

There is attached to the deed a certificate of acknowledgment by a justice of the peace in due form.

It was proved that *Catharine Roe*, the grantee in said deed, after the execution thereof, went into the possession

of the land therein described, and that she died in *March*, 1867; that the plaintiff, *Louisa Prior*, is the person named in said deed as "*Louisa Stewart*," and is a daughter of said *Catharine Roe*, and that said *Louisa* is now the wife of said *James Prior*. The evidence further shows that the defendant, *Quackenbush*, at and before the commencement of the suit, was in possession, and that the plaintiff *Louisa*, before the commencement of the suit, demanded of the defendant possession of a moiety of said land. It was agreed by the parties that *Andrew Stewart* and his wife, the grantors in said deed, were lawfully seized, in fee, of said land at the date of said deed. It was also admitted by the parties on the trial that in the year 1847, and after the foregoing deed had been duly recorded, said *Andrew Stewart* and wife conveyed all their lands to said *Catharine Roe*, *William Wasson* and *Barnes Lawson*, including therein the tract in controversy, and that said grantees, soon thereafter, made a partition of all of said lands between themselves, and the said *Catharine Roe* and *William Wasson* executed a deed of conveyance to said *Lawson* for the part of said lands so partitioned to him, which included the land in controversy; that said *Lawson* thereupon went into the possession thereof and subsequently died, but before his death he devised, by his last will, a tract of land to his wife, *Ellen Lawson*, including the tract in dispute, and that said *Ellen* conveyed the same to the defendant. It was admitted that said deeds and will were all regular, and sufficient to convey the land in controversy to the defendant, unless the deed from *Stewart* and wife to said *Catharine Roe* therefor "conveys or reserves some part of the same to said plaintiff *Louisa*, by bargain, sale, limitation or otherwise.

It is insisted by the appellants that the deed from *Stewart* and wife to *Catharine Roe*, for the land in controversy, only conveyed to said *Catharine* an estate for life, with remainder in fee to said *Elizabeth* and *Louisa Stewart*, and that upon the death of said *Catharine*, the plaintiff *Louisa* became entitled to the possession of an undivided moiety

thereof. On the other hand, it is claimed by the appellee that said deed conveyed the land to said *Catharine* in fee simple, and that his title, therefore, derived from her, is a valid one for the whole of said land. The only question then in the case is, did the deed of *Stewart* and wife to *Catharine Roe* convey to her an estate in fee or only a life estate? But for the qualifying clause called a " condition," annexed at the conclusion of the deed, the estate conveyed would evidently be a fee simple, and it is contended by counsel for the appellee that if such concluding clause be construed to create a limitation, such limitation not being referred to in the first clause, or premises, of the deed, and being inconsistent therewith, would be void.

It was well said by Chief Justice TILGHMAN in *Wager* v. *Wager*, 1 Serg. & R. 374, that " one of the most important rules in the construction of deeds is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties, and it must have been their intent to have some meaning in every part. It never could be a man's intent to contradict himself; therefore we should lean to such a construction as reconciles the different parts, and reject a construction which leads to a contradiction. The premises of a deed are often expressed in general terms, admitting of various explanations in a subsequent part of the deed. Such explanations are usually found in the *habendum*."

" The office of the *habendum* is properly to determine what estate or interest is granted by the deed, though this may be performed, and sometimes is performed, by the premises, in which case the *habendum* may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to the estate granted in the premises. As, if a grant be ' to A and the heirs of his body,' in the premises, *habendum*, ' to him and his heirs forever.' Here, A has an estate tail, and a fee simple expectant thereon. But had it been in the premises ' to him and his heirs,' *habendum*, ' to him for life,' the *habendum* would be utterly void, for an estate of inheritance is vested in him

before the *habendum* comes, and shall not afterward be taken away or divested by it." 2 Blacks. Com., p. 298.

In the case before us, the qualifying clause is not found either in the premises or the *habendum*, but at the conclusion of the deed. This, however, does not render it void, as the validity of the deed does not depend on its containing all the formal parts ordinarily found in such instruments. Looking, then, to the qualifying clause in connection with the other parts of the deed, for the purpose of ascertaining the meaning of the grantors, and construing the whole together, and so as to reconcile, if possible, the different parts, it seems to us that the qualifying clause relates directly to, and should be read in connection with, the premises, and was intended to limit the duration of the estate granted to *Catharine Roe* to an estate for life, with remainder to her two daughters, *Elizabeth* and *Louisa Stewart*.

It is expressly declared in the qualifying clause that by the word heirs, as used in the preceding parts of the deed, said *Elizabeth* and *Louisa* alone were intended, and that at the death of said *Catharine Roe*, the land conveyed should be thereafter in them.

If the qualifying clause is taken as a part of the premises and read in that connection, the deed would, in effect, read thus: "This indenture," &c., "between *Andrew Stewart* and *Hannah*, his wife, of," &c., "of the one part, and *Catharine Roe* and her heirs, *Elizabeth* and *Louisa Stewart*, of the other part, witnesseth: that the said *Andrew Stewart* and *Hannah*, his wife, as well for and in consideration of the natural love and affection which they bear to the said *Catharine Roe* and her heirs, the said *Elizabeth* and *Louisa Stewart*, as for the better maintenance and support of the said *Catharine*, *Elizabeth* and *Louisa*, have given, granted," &c., "to the said *Catharine Roe* and to her heirs, the said *Elizabeth* and *Louisa Stewart*, that is to say, to the said *Catharine* during her life, and, at her death, then to the said *Elizabeth* and *Louisa*, all that tract and parcel of land," &c.

If the deed were thus worded, it would hardly be doubted that it conveyed only a life estate to *Catharine Roe*, with a remainder to her two daughters, *Elizabeth* and *Louisa*, and that upon the death of the former, the latter would be entitled to the possession, as tenants in common, and such, we think, is its legal effect. Any other construction would lead to a conflict between the premises and the qualifying clause, or render the latter meaningless.

Although the deed does not bear the evidence that it was written by one "learned in the law," yet it presents certain *indicia* which go to confirm the correctness of the construction we have given to it. We refer to the fact that in naming the parties to the deed in its commencement, "*Catharine Roe* and her heirs" are named as the grantees, or party of the second part, which is unusual when the word "heirs" is used in the grant simply to convey a fee to the grantee named in the deed. And so the consideration is stated to be "as well the natural love and affection which" the grantors "bear to said *Catharine Roe* and her heirs, as for the better maintenance and support of the said *Catharine* and her heirs." This unusual use of the word heirs, when taken in connection with the qualifying clause at the close of the deed, defining the persons meant thereby, very clearly indicates that it was the intention of the grantors to convey an estate in remainder directly to *Elizabeth* and *Louisa Stewart.*

But it is claimed by the appellant that the word "heirs," used in connection with the name of *Catharine Roe*, the grantee, being a technical term of limitation, and not of purchase, brings the grant within the rule in *Shelley's* case, and invested said *Catharine* with an estate in fee simple, notwithstanding the subsequent clause declaring that at her death the land should go to said *Elizabeth* and *Louisa Stewart;* that it must be presumed that it was the intention of the grantors that the latter should take, if at all, by descent from said *Catharine*, and not by purchase from said grantors. If, however, we are correct in the construction given to the

whole instrument, then the word "heirs" was not used in its technical sense, as a term of limitation, and the rule in *Shelley's* case does not apply.

We think the facts do not sustain the finding of the court, and therefore that a new trial should have been granted.

The judgment is reversed. with costs, and the cause remanded for a new trial.

*S. Claypool, J. A. Matson, A. G. Cavins* and *J. R. Isenhower,* for appellants.

*E. E. Rose* and *E. H. C. Cavins,* for appellee.