E. L. KRITES AND WIFE, LILLIAN KRITES, v. ROY PLOTT AND WIFE,
HATTIE PLOTT.

(Filed 17 March, 1943.)

**1. Deeds § 11—**

A deed is construed by its "four corners," taking all of its provisions
together and, in case of an apparent repugnance, adopting that construc-
tion which is most consonant with the intent of the parties.

**2. Deeds § 13a—**

A deed from husband to wife, reserving a life estate and containing the
following, after the conveyance clause and description, "the party of the
first part makes this deed to his beloved wife Cora Thompson her lifetime
at her death it is to go to Roy Plott and his wife Hattie Plott and their
heirs," conveys a fee simple remainder to Roy Plott and his wife, Hattie
Plott, following the life estates.

STACY, C. J., concurring.

WINBORNE, J., joins in concurring opinion.

APPEAL by plaintiffs from *Alley, J.,* at November Term, 1942, of
YADKIN. Affirmed.

The plaintiffs sued the defendants in ejectment for the recovery of
the tract of land described in the complaint. The defendants answered
the complaint, denying plaintiffs' title and claiming the land by adverse
possession under colorable title for seven years next preceding the insti-
tution of the action. C. S., 428. The plaintiffs replied, setting up the
deed under which they allege the defendants claim title, alleging that it
conveys no title, but constitutes a cloud upon plaintiff's title, which they
ask to have removed.

By consent of parties, the cause was heard before Judge Felix E.
Alley at the November Term, 1942, of Yadkin Superior Court, without
the intervention of a jury. The parties entered into a stipulation,
whereby it was agreed that the deed referred to in the pleadings was
that same deed executed by U. J. Thompson to Cora Thompson, 21 July,
1932, and recorded in Book 37, page 20, in the office of the register of
deeds for Yadkin County, reading as follows:

"THIS DEED, Made this 21st day of July, A.D. 1932, by U. J. Thomp-
son of Yadkin County and State of North Carolina, of the first part, to
Cora Thompson of Yadkin County and State of North Carolina, of the
second part:

"WITNESSETH, That said U. J. Thompson, in consideration of One
Dollar Dollars, to his paid by Said party of the second part the receipt
of which is hereby acknowledged, have bargained and sold, and by these

presents do grant, bargain, sell and convey to said Said party of second part their heirs and assigns, a certain tract or parcel of land in Yadkin County, State of North Carolina, adjoining the lands of Pill Smith, John White, and others, and bounded as follows, viz.:

"BEGINNING at iron stake in Pill Smith line and on the West side of the road leading from the church to Thompson mills then East 31 chs. and 20 links to Iron stake on the West Side of the old Georgia Road, the Westard corse with the old Georgia road, as it meanders 32 chs. and 56 links to the Phill Smith corner then North in Smiths line 5 ch. and 15 links to a stone Then West with Smith line on with the Church lot 7 chs. to a stone, in the center of the Road Then North with Phill Smith line 8 ch. 74 links to the Beginning containing 28 acres more or less.

"Now be it understood in this that the party of the first part makes this deed to his beloved wife Cora Thompson her life time at her death it is to go to Roy Plott and his wife Hattie Plott and their heirs.

"Now be it Remembered that U. J. Thompson of the first part is to hold the above land his life time.

"To HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and appurtenances thereto belonging, to the said Cora Thompson her heirs and assigns, to her only use and behoof forever.

"And the said U. J. Thompson for his self and his heirs, executors and administrators, covenant with said party of the second part their heirs and assigns, that he is seized of said premises in fee, and have right to convey in fee simple; that the same are free and clear from all incumbrances, and that he does hereby forever warrant and will forever defend the said title to the same against the claims of all persons whomsoever.

"IN TESTIMONY WHEREOF, the said U. J. Thompson have hereunto set his hand and seal, the day and year first above written.

HIS

U. J. (×) THOMPSON

MARK

"Attest: J. C. MILLER."


It was further stipulated that U. J. Thompson died 7 August, 1932, Cora Thompson, his wife, surviving him. Cora Thompson died 24 August, 1933. She left a son by a former marriage, E. L. Krites, the plaintiff in this action, who is married to Lillian Krites, co-plaintiff, and is the only son and heir at law of Cora Thompson. Roy Plott is not related by blood or marriage to U. J. Thompson, but was reared by the said Thompson, having lived with him until he reached a majority.

It was agreed that both plaintiffs and defendants are claiming under the deed above set out; that defendants are in possession of the property described in the pleadings and have been in possession since the death of Cora Thompson.

Upon the call of the case for trial, plaintiffs and defendants, in open court, waived a jury trial and agreed that the only question involved was a question of law for the court in the interpretation of the aforesaid deed.

Thereupon, Judge Alley, finding the facts, signed judgment for the defendants, and the plaintiffs appealed.

*S. Carter Williams and Whitman & Motsinger for plaintiffs, appellants.*

*A. T. Grant and Hall & Zachary for defendants, appellees.*

SEAWELL, J. We agree with the construction placed upon the deed by the trial judge.

In the construction of deeds, the Court has endeavored to follow and apply the principles adopted and promulgated in *Triplett v. Williams,* 149 N. C., 394, 63 S. E., 79, rather comprehensively expressed in the rule that such an instrument must be construed from "its four corners" in order that its true intent may be given effect. *Seawell v. Hall,* 185 N. C., 80, 82, 116 S. E., 189. *Triplett v. Williams, supra,* cites with approval 1 Jones, Real Property, section 568: "The inclination of many courts at the present day is to regard the whole instrument without reference to its formal divisions." With the *Triplett case, supra,* passed into discard many of the artificial rules and doctrines, which put the construction of deeds of conveyance in a class separate and apart from other instruments to which more liberal rules have been applied for the purpose of ascertaining their intent. Especially, the order in which its different clauses are arranged is not considered of such technical importance as to be controlling against the intent of the deed, when that could be reasonably ascertained by a consideration of the whole instrument. *Jones v. Whichard,* 163 N. C., 241, 79 S. E., 507. Cited with approval in the *Triplett case, supra,* are the following: "All parts of the deed should be given due force and effect." *Doren v. Gillum,* 136 Ind., 134, 35 N. E., 1101. "Words deliberately put in a deed, and inserted there for a purpose, are not to be lightly considered or arbitrarily thrust aside." *Mining Co. v. Becklenheimer,* 102 Ind., 76, 1 N. E., 202.

To adopt now the rule that the effect of repugnant clauses in a deed must be determined by their order of precedence—the first expression controlling—and that technical and formal expressions of conveyancing must control at any cost, would be to put the rules of construction back

to the condition which prevailed prior to *Triplett v. Williams, supra;* *Jones v. Whichard, surpa,* and other cases adopting the more liberal construction canons which put the intent uppermost. The true test is to take all of the provisions together and in the case of an apparent repugnance, to adopt that construction which is most consonant with the intent of the deed; and it cannot be questioned that this intent is not infrequently found in the later expressions of the instrument, and that they are sometimes of a character so impressive as to override the more formal technical expressions in which conveyances are sometimes couched.

In *Brown v. Brown,* 168 N. C., 4, 84 S. E., 25, we find the expression:

"Words deliberately put in a deed and inserted there for a distinct purpose are not to be lightly considered or arbitrarily thrust aside, the discovery of the intention of the parties being the first and main object in view; and when it is ascertained, nothing remains to be done but to execute it without excessive regard for merely technical inaccuracies or formal division of the deed."

In the deed under consideration, inserted after the conveyance clause and description of the property, we have the following rather impressive statement:

"Now be it understood in this that the party of the first part makes this deed to his beloved wife Cora Thompson her life time at her death it is to go to Roy Plott and his wife Hattie Plott and their heirs.

"Now be it Remembered that U. J. Thompson of the first part is to hold the above land his life time."

At this point the intention to give to Cora Thompson a life estate and to Roy Plott and his wife, Hattie Plott, the remainder in fee we think is obvious. Since U. J. Thompson predeceased his wife, Cora Thompson, we need not consider the apparent reservation of a life estate to him.

There was nothing in the opinion or dissenting opinion in *Jefferson v. Jefferson,* 219 N. C., 333, 13 S. E. (2d), 745, indicating a tendency to depart from the rule of construction laid down in the *Triplett case, supra.* Applying this rule to the construction of the deed under review, and considering it as a whole, we get the distinct impression that it is expressive of the intention of the grantor, U. J. Thompson, to give to Roy Plott and Hattie Plott, defendants in this action, a fee simple remainder following the life estates to himself and wife, and this we hold to be its legal effect.

It therefore follows, under the stipulations upon which the trial was had, that the defendants are now the owners in fee.

The judgment of the court below is

Affirmed.

STACY, C. J., concurring: The law favors the unfettering of estates and enjoins the fee construction of conveyances, "unless such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity." C. S., 991; *Triplett v. Williams,* 149 N. C., 394, 65 S. E., 79; C. S., 4162; *Jolley v. Humphries,* 204 N. C., 672, 167 S. E., 417.

Here, we have a deed which in plain and express words shows that the grantor meant to convey to his wife a life estate with remainder in fee to Roy Plott and his wife, Hattie Plott, after reserving to himself a life interest in the land. That such is plainly intended appears from the two paragraphs inserted immediately following the description and before the *habendum.* Nor is this conclusion overborne by the technical words of inheritance found in the formal parts of the deed, the use of which evidently resulted from the adaptation of a printed form to the purposes of the conveyance. It is also noted that in the granting clause the word "their," instead of "her," is used before the words "heirs and assigns." It was patently not intended that Cora Thompson should take a fee.

The object of all interpretation is to arrive at the intent and purpose expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose unless at variance with some rule of law or contrary to public policy. *McAden v. Craig, ante,* 497 (offer); *Winders v. Kenan,* 161 N. C., 628, 77 S. E., 687 (option); *Jones v. Casstevens, ante,* 411 (contract); *Whitley v. Arenson,* 219 N. C., 121, 12 S. E. (2d), 906 (deed); *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356 (will); *Trust Co. v. Hood, Comr.,* 206 N. C., 268, 173 S. E., 601 (statute); *Muse v. Motor Co.,* 175 N. C., 466, 95 S. E., 900 (pleading).

The heart of every text is the intent and purpose therein expressed and thereby sought to be conveyed.

When the language of a writing is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of construction. It must be given its plain and obvious meaning. *Brock v. Porter,* 220 N. C., 28, 16 S. E. (2d), 410; *Potato Co. v. Jenette,* 172 N. C., 1, 89 S. E., 791.

It is only in the case of ambiguity or uncertain meaning that the rules of construction are applicable. These rules, adopted as legal aids, are intended to make for certainty and uniformity in the interpretation of doubtful instruments. When regarded, the intent is thus legally ascertained; if ignored, the court may become the creator, rather than the discoverer, of the intent. *Whitley v. Arenson, supra.*

Probing the minds of doubtful writers, long after they have written and moved on, presents some of the most difficult problems known to the law. *Cole v. Fibre Co.,* 200 N. C., 484, 157 S. E., 857. This is necessarily so, for those who write cloudily convey different impressions to different minds. The writing would not be doubtful if it had the same meaning to everyone. Then, too, the use of words is capable of an infinite variety of combinations. For example, the words "up" and "down" have opposite meanings; and yet to the motorist on the highway, when preceded by the word "slow" (slow up, slow down), they both have the same meaning. Language is a method of conveying thought, and it may vary greatly in color and content according to the circumstances and time of its use. *Towne v. Eisner,* 245 U. S., 418; *Warrenton v. Warren County,* 215 N. C., 342, 2 S. E. (2d), 463. Consequently, the suggestion has been made that precedent is of less value in the work of interpretation and construction than in other branches of the law. *Patterson v. McCormick,* 181 N. C., 311, 107 S. E., 12. In some instances it may be "no more than guesswork." *Clement v. Whisnant,* 208 N. C., 167, 179 S. E., 430. Yet after saying this, and whatever its character, we assiduously pursue the adjudicated cases for any gleam of light that may help us with the problem in hand. Worthy ideas expressed elsewhere and on other occasions, like nuggets of truth whenever and wherever found, know no barriers of time and place. *Smith v. Mears,* 218 N. C., 193, 10 S. E. (2d), 659. The goal is to discover the true meaning in every case.

WINBORNE, J., joins in concurring opinion.