·Shoe et al. *v.* Heckley et al.

[No. 11,121. Filed February 16, 1922. Rehearing denied April 26, 1922. Transfer denied October 12, 1922.]

1. REFORMATION OF INSTRUMENTS.—*Deeds.—Scrivener's Errors of Law.—Correction.*—Where a scrivener was employed by both parties to draw a deed, and in preparing such an instrument as he supposed would be available to carry out the intention of the parties, as explained to him, made errors in the terms employed due to a misinterpretation of their legal effect, so that the instrument failed to effectuate the purpose of the parties, such mistakes were errors of law which could not be corrected. p. 590.

2. DEEDS.—*Validity.—Conveyances to Heirs of Living Person.*— A deed to the heirs of a living person, without naming such heirs, conveys no title, being void for uncertainty as to the grantee. p. 591.

3. DEEDS.—*Construction.—Use of Words.—"Heirs."*—While the word "heirs," as used in a deed, may mean "children," this meaning cannot be ascribed to the word unless it very clearly appears that it was used in that sense. p. 593.

4. DEEDS.—*Construction.—Granting Clause.—Habendum.—Conflict.*—While every part of a deed should be examined and the instrument construed as a whole, yet, if the habendum is found to be in conflict with the granting clause, the habendum must give way, upon the theory that the deed should be construed most strongly against the grantor in order to prevent a contradiction or retraction by a subsequent part of the deed or a limitation placed upon a right granted or given in the premise. p. 593.

5. DEED.—*Construction.— Granting Clause Conveying Title in Fee Simple.—Contradictory Habendum Clause.*—Where a warranty deed granted a fee simple estate to grantor's wife, and the habendum clause provided that on the death of the wife the "described real estate shall be divided equally among the heirs of" grantor, the conveyance to the wife of a fee simple was not limited by the habendum clause, providing for the

division at the death of the grantee of the real estate among the heirs of grantor, such heirs not being specifically named. p. 594.

From Wells Circuit Court; *Frank W. Gordon,* Judge.

Action by Mary Shoe and others against Eugenia Heckley and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Charles G. Dailey, Abram Simmons* and *Virgil M. Simmons,* for appellants.

*Charles E. Sturgis* and *Robert W. Stine,* for appellees.

NICHOLS, J.—This is a suit to quiet title, in second, third and fourth paragraphs of amended complaint.

It is averred in the second paragraph, in substance, that on and prior to February 8, 1901, one Martin Heckley was the owner in fee simple and in the possession of certain real estate in Wells county, Indiana. At said time and prior thereto the said Heckley and appellee Eugenia Heckley, hereinafter mentioned as appellee, were husband and wife, appellee being the second and childless wife. Appellants and appellee Frank Heckley, were the children of said Martin Heckley by a former marriage, and were his only children then living. On February 8, 1901, said Heckley desired to convey a life estate in said real estate to his then wife, appellee, and the remainder thereof to his said children, and appellee desired that he should so convey it, and they agreed to so convey it for the purpose of making a family settlement, and that they would make one James Lepper a single man, the agent through whom a life estate in and to said real estate should pass to appellee, and the remainder thereof to the said children as aforesaid, and to carry out said intent and purpose, they agreed that a warranty deed should be first executed by them for said real estate to said Lepper, and that said

Lepper should then execute a warranty deed, conveying to appellee a life estate therein, and the remainder thereof to said children as aforesaid. It was agreed that one Krewson should act as scrivener to draw both of said deeds, and that he should act as the notary public and officer before whom the acknowledgment of the execution of said deeds should be taken. That said Martin Heckley and appellee did on said date go to said Krewson and employ him to act as the scrivener, and he did so act, and prepared a warranty deed, and said Martin Heckley and appellee executed the same and delivered it to said Lepper, which warranty deed, so far as here involved, is in the usual form of such instruments. Said Lepper paid no consideration for said real estate, but accepted said conveyance only as the agent of said Martin Heckley and appellee from whom a life estate was to pass and be conveyed from said Martin Heckley to appellee, and the remainder thereof to the said children. At the same time and as a part of the same transaction, the said Krewson acting as scrivener prepared a warranty deed, and the said Lepper executed and delivered it to appellee, in words and figures, so far as here involved, as follows:

"THIS INDENTURE WITNESSETH, That James Lepper, an unmarried man, of Wells County, in the State of Indiana, CONVEY AND WARRANT to Eugenia Heckley of Wells County in the State of Indiana for the sum of one dollar the following real estate in Wells County in the State of Indiana, to-wit: (here follows the description) — This conveyance carries with it and conveys to the grantee all the personal property of every description upon said land above conveyed. It is further agreed and it is an essential part of this conveyance that upon the death of said grantee Eugenia Heckley that the above described real estate shall be divided equally among the heirs of the said Martin Heckley, Sr.
     IN WITNESS WHEREOF, ETC."

Appellee paid no consideration to either the said Martin Heckley or the said Lepper for said real estate. That prior to and at the time the said deed last mentioned was executed and delivered, it was the agreement and intention on the part of the said Martin Heckley and appellee and said Lepper, and said scriveners, and each of them, that said deed was to be so prepared that it would convey unto appellee a life estate, and unto the said children the remainder thereof, and said Martin Heckley and appellee and said Lepper and said scrivener and each of them believed and intended at the time that said deed did convey to appellee a life estate and unto said children, the remainder thereof. That by mutual mistake said deed was made to read and provide as above set out, when in truth and in fact said deed should have been drawn so that the same would have conveyed a life estate to appellee and the remainder thereof to said children, and said deed would have been so drawn as intended had it not been for said mutual mistake. That appellee and Frank Heckley, claim an interest in and to said remainder so owned in fee simple by appellants which claim is without right and unfounded, and is a cloud upon the title of appellants. Said Martin Heckley died intestate in Wells county, Indiana, long prior to the bringing of this action, leaving as his only heirs at law his said children, and his said wife, who at the time was childless. Prayer for correction of said deed so that it will convey in clear and express terms, a life estate in said real estate to appellee, and the remainder thereof to said children, and that the title of appellants in and to said remainder be quieted.

The third paragraph of amended complaint is substantially the same as the second.

The fourth paragraph, upon the same facts, is based upon the theory that the children are the owners of the remainder by inheritance. We do not need to set

out these paragraphs. A demurrer to each of these paragraphs was sustained, and appellants refusing to plead further, judgment was rendered against him. The court's rulings on the demurrers are the errors assigned.

The mutual mistake that appellants would correct was in making the deed read as it did in the habendum instead of making it so read as to convey a life estate to appellee, and the remainder to the children of Martin Heckley, naming them. It is apparent from the averments of the complaint and from the instrument itself that the mistake did not consist in inserting in the deed a form of words not intended, or in omitting therefrom a form of words intended to be inserted, but that it did consist in the misinterpretation of the legal effect of the expression used, in other words, it was not a mistake of fact, but a mistake of law.

As stated in *Prior* v. *Quackenbush* (1868), 29 Ind. 475: "The deed does not bear the evidence that it was written by one 'learned in law.'" It has been repeatedly held in this state that such mistakes, being of law, cannot be corrected. *Nelson* v. *Davis* (1872), 40 Ind. 366; *Allen* v. *Anderson* (1873), 44 Ind. 395; *Baldwin* v. *Kerlin* (1874), 46 Ind. 426; *Heavenridge* v. *Mondy* (1875), 49 Ind. 434; *Baker* v. *Pyatt* (1886), 108 Ind. 61, 9 N. E. 112; *Phoenix Ins. Co.* v. *Rogers* (1894), 11 Ind. App. 72, 38 N. E. 865.

In *Nelson* v. *Davis, supra,* the court portrays a situation that aptly describes the one here involved, as we understand it, as follows: "It may, perhaps, be supposed that a scrivener was employed to prepare the deed, to whom the parties explained their purposes in the matter, and that he prepared such an instrument as he supposed would be available in carrying them out, and that the grantors executed it, all parties supposing that the terms employed would be sufficient to effectuate

such purposes. If so, and if in this they were mistaken, it was a mere mistake of law, from which, except in cases of peculiar character, no relief can be granted."

Under the foregoing authorities, it is clear that the mistake which appellants seek to correct being one of law, and not of fact, we are not permitted to re-

2. form the instrument to make it express the meaning for which appellants contend, assuming that in its present form it does not express such meaning. As the deed now reads, at the death of appellee the real estate was to be divided equally among the heirs of Martin Heckley. But Martin Heckley, at the time the deed was executed, was living, and we are now confronted with the proposition that deeds to the heirs of living persons, without naming such heirs, convey no title.

In *Winslow* v. *Winslow* (1875), 52 Ind. 8, deeds had been made to the heirs of certain living persons, and the court said: "It is not contended but that these deeds were void, for the reason that no one can have heirs while living, and that therefore, the grantees cannot be ascertained. Such we find to be the law." Authorities are cited.

In *Outland* v. *Bowen* (1888), 115 Ind. 150, 17 N. E. 281, 7 Am. St. 420, the limitation over was to the "lawful heirs" of Joseph Bowen, the grantor who was then in life. The court said, "As no one can be heir to the living, it follows that there was no person in being competent to take the estate limited over."

In *Tinder* v. *Tinder* (1892), 131 Ind. 381, 30 N. E. 1077, the court, speaking by Elliott, C. J., criticising the doctrine that conveyances to heirs of persons then living are ineffective, says that, "It is possibly true that this court is committed to the doctrine of *Hall* v. *Leonard*, 1 Pick. (Mass.) 27, for it has been approved by our decisions," citing *Winslow* v. *Winslow, supra,*

and *Outland* v. *Bowen, supra.* The court distinguishes the case which it was there considering from one in which the grantor attempts, as here, to create a particular estate and limit a remainder over. In that case there was neither a dividing of interests nor a carving out of estates, and the court says that the fact that there was no attempt to carve out a particular estate or create a remainder effectively marks that case as one belonging to a different class from the class represented by such cases as *Outland* v. *Bowen, supra.* The court says that had it been an attempt to create an estate in remainder, it would have been faced with a very different question.

In *Booker* v. *Tarwater* (1894), 138 Ind. 385, 37 N. E. 979, a deed purported to convey real estate to "Francis Carrico's Heirs," Francis Carrico being alive, and the court held that in the absence of words showing that the grantor meant the term "heirs" to mean "children," the deed was void for uncertainty. The court reviewing the Tinder case, says: "The court then goes on to hold that where there are any other words in the deed from which it may be inferred that the grantors did not use the word heir or heirs in its strict technical legal sense, or that indicate that children were thereby intended, then the rule does not apply, and that effect will be given to the apparent intent. But here there are no other words in the deed to indicate any other intention on the part of the grantor than that he used the word 'heirs' in its strict legal sense. He may have meant children, and he may have meant heirs. This makes it wholly uncertain as to who the grantees were. If he had used words in addition indicating that he meant children by the word 'heirs,' that would have been certain enough, but he might have meant heirs in the legal signification of the word. If he did, then in addition to the fact that a man cannot have heirs while he lives, it would always remain a matter of great uncertainty who the man's

heirs would be until he dies.    So that if he meant heirs in the legal signification of the word, it was void for uncertainty, and because he could have no heirs while he lived.    But, as we do not know whether he meant heirs, in the legal signification of the word, or children, the deed is equally void for uncertainty in the grantee." To the same effect, see *Duffield* v. *Duffield* (1915), 268 Ill. 29, 108 N. E. 673, Ann. Cas. 1916D 859; *Kepler* v. *Castle* (1917), 281 Ill. 444, 117 N. E. 1029.

The case of *Prior* v. *Quackenbush, supra,* cited and relied upon by appellants, is readily distinguished from the instant case in this, that "heirs" as therein used is expressly defined as meaning two persons, naming them, they being the only heirs contemplated in the deed involved.    There could be no uncertainty as to the persons meant.    Had these two persons not been named thereby defining the word "heirs" as used, extrinsic evidence could not have been heard to name them or to show that by the use of the word "heirs," the grantor meant "children."    As stated above, there must be qualifying words in the deed.

While it is true that the word "heirs" may mean "children," this meaning cannot be assigned to the word unless it very clearly appears that it was used in that sense.    *McCllen* v. *Sehker* (1919), 70 Ind. App. 435, 123 N. E. 475.

The deed under consideration is a warranty deed and the language of its granting clause is such as to convey to the grantee named therein a title in fee simple.    The only qualifying words in the instrument are found in the habendum and, while it is a rule of law that every part of a deed should be examined and construed as a whole, if the habendum is found to be in conflict with the granting clause, the habendum must give way, and this is stated to be upon the theory that

the deed should be construed most strongly against the grantor in order to prevent a contradiction or retraction by a subsequent part of the deed or a limitation placed upon a right which has been granted or given in the premise. *Lamb* v. *Medsker* (1905), 35 Ind. App. 662, 74 N. E. 1012.

We hold that, as the warranty deed here involved by its granting clause conveys to the grantee a fee simple, such title cannot be limited by a habendum clause providing at the death of the grantee for the division of the real estate among the heirs of the grantor, such heirs not being specifically named. The habendum clause is void not only for uncertainty but because it is in contradiction to the estate conveyed by the granting clause.

Other questions are discussed but the foregoing is sufficient to justify us in holding that the trial court did not err in its rulings on the demurrers.

Judgment affirmed.